SWANK v. NICHOLS' Adm'r.

CONTRACT—WAIVER.—*A*, being afflicted with a cancer, employed *B*, a cancer-doctor, to treat him for its cure, and it was agreed between them that the doctor was to have 100 dollars, and was to do *A* 100 dollars' worth of good, and, if he cured him, he was to have 200 dollars. The doctor treated him about six months. At the end of about three months, *A* gave *B* his two notes—one for 25 dollars, and one for 200 dollars—and at the end of six months he died.

Said notes were filed as a claim against *A's* estate.    Defense, want
and failure of consideration, and fraud.

*Held,* that, in the absence of fraud, the giving of said note for 200
dollars, when the period of treatment had only half expired, and
its result was uncertain, amounted in law to a waiver of the origi-
nal contract; and that parol evidence would not be admissible to
show that the note, unconditional on its face, was intended by the
parties to be conditional; but its consideration might be disputed.

APPEAL from the *Owen* Common Pleas.

PERKINS, J.—Two notes were filed in the office of the clerk
of the *Owen* Common Pleas against the estate of *Amos Nich-
ols,* deceased.    The notes were executed by *Amos* in his life-
time, payable to *Moses Swank*—one for 25 dollars, and the
other for 200 dollars.

On the filing of the notes, the proper docket entry was
made.

*Armstrong L. Nichols* appeared at the next term of the
court and answered, setting up want of consideration, fail-
ure, &c., and fraud.

Issues of fact were formed, tried, and there was final judg-
ment for the defendant.

The evidence and instructions are upon the record.

It appears that *Amos Nichols,* for about four years, had had
a cancer upon his under lip, and that by *June,* 1858, it had
increased to such an extent as to present, in the language of
the witnesses, "a bad case."    About the first of *June* named,
said *Amos* employed *Moses Swank,* the plaintiff, who claimed
to be a cancer-doctor, to attend upon him as a physician.
The doctor was to have 100 dollars, and was to do *Amos* 100
dollars' worth of good, and, if he cured him, he was to have
200 dollars.    The doctor entered upon his employment, and
continued in it about six months, but he did not cure his pa-
tient.    *Nichols* died of the cancer on the 1st of *August,* 1859.

The doctor's treatment was strong plasters, almost daily ap-

plied—probably caustic plasters; they caused severe suffer-
ing. He advised a generous diet, but not of salt or greasy
food, and also abstinence from vigorous or long-continued
exercise.

Some physicians were examined on the trial, who stated
that no improvement had been made for many years in the
treatment of cancers; that in early stages of them, caustics
to eat them out, or the knife to cut them out, (surgical oper-
ations,) were the remedies; in later stages of cancers, where
they have become incurable, palliatives should only be used.
A diet such as that recommended by *Swank*, and habits as to
exercise, were proper, as was also an abstinence from the use
of stimulants.

There, was no dispute upon the point that *Swank* did not
cure *Nichols*. There is hardly a doubt but that *Nichols* de-
viated from the directions of *Swank* as to diet and habit.
There is a conflict in the evidence as to how much benefit
*Nichols* received from *Dr. Swank's* treatment. Indeed, how
could it be valued in money? Was not the doctor to be paid
100 dollars, in any event? Is not such the legal effect of the
contract?

About the middle of *September*, after *Swank* had been treat-
ing him over. three months, *Nichols* gave *Swank* the two notes
filed as the foundation of this suit.

There is evidence tending to show that, when they were
given, the original . contract was waived and superceded.
There is evidence tending to show that the 25 dollar note was
given upon a separate consideration.

The Court instructed the jury thus:

"If you believe from the evidence that the notes were given
in consideration that the plaintiff should cure the deceased,
and that he failed to cure him; or if the plaintiff agreed to
do something as the consideration of the notes which he did
not do, you must find for the defendant; you must find the

whole amount of 200 dollars or none of it." To this the plaintiff excepted.

Had the agreement upon which the note was given, been simply that *Swank* was to have 200 dollars for curing *Nichols*, it is probable that he could not have sued upon the note and recovered anything less than the entire amount. Cure would have been a condition precedent to any amount of pay upon the contract; but if the contract had not been fulfilled, though there had been services rendered, under such circumstances as would entitle the plaintiff to compensation upon a *quantum meruit*, then there would necessarily have been a paragraph in the complaint, in suing for such services, upon a *quantum meruit*. Such was the case of *Coe* v. *Smith*, 1 Ind. 267. See the same case again in the 4th Ind. 79. In the case at bar the original contract was different. The doctor did not agree to cure. He was to attend upon the patient, and have a compensation less than 200 dollars, but if he effected a cure, he was to have 200 dollars. The larger note in question in this suit, was given for the highest sum named in that contract; but if the cure had not been effected before the services ceased, the consideration, as to at least 100 dollars of that contract had failed, and also of the note if it was given upon that contract.

It would have been safe to have added a paragraph to the complaint, upon a *quantum meruit*, as physicians can recover for their services upon such a claim in *Indiana*, where there is no special contract; and in some cases, where one has existed but has been broken or rescinded. *Coe* v. *Smith*, 4 Ind. *supra*. The Court refused to instruct the jury, that if they believed that the contract for services by the doctor was made in *June*, and that in *September* following *Nichols* gave him the note for 200 dollars, such act would, in the absence of fraud, be a waiver of the conditions of the original contract. We think this instruction should have been given. At the time

the note was given the service under the original contract was still being performed; the result to be accomplished by it was still uncertain, and yet the note was given unconditionally, for a certain sum. It made no reference to any other contract. In such a state of facts, the giving of the note, in the absence of fraud, amounted, in law, to a waiver, because, if such was not the real intention of the parties, still, parol evidence is not admissible to show the note a conditional one. The authorities in this Court are in point. *Miller* v. *White*, 7 Blackf. 491; *O'Donald* v. *The Evansville &c., Co.*, 14 Ind. 259; *The Evansville &c., Co.* v. *Dunn*, 17 Ind. 603. But still the consideration of the note may be disputed.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded for further trial.

*Wm. M. Franklin*, for the appellant.